George ROSS, et al., Plaintiffs,

v.

**STATE OF ALABAMA,
et al., Defendants.**

Civil Action No. 95–D–622–S.

United States District Court,
M.D. Alabama,
Southern Division.

July 22, 1998.

---

Kenneth C. Sheets, Jr., Dothan, AL, Kathleen R. Hennessey, New Orleans, LA, for Plaintiff.

Gary Clayborn Sherrer, Dothan, AL, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

Before the court is a "Motion to Dismiss, For Judgment on the Pleadings, or in the Alternative for Full or Partial Summary Judgment," and Memorandum Brief in Support Thereof ("Defs.' Mem.Br."), submitted

by Defendants Houston County Department of Human Resources, Lucia B. Parsons, and Donna Jones Bowman on October 6, 1995. Plaintiffs filed a Memorandum in Opposition ("Pls.' Mem. in Opp.") on December 12, 1995, wherein Plaintiffs also request partial summary judgment against Defendant Jones [Bowman] for her liability under 42 U.S.C. § 1983. Defendants filed a Reply to Plaintiffs' Memorandum in Opposition ("Defs.' Reply") on January 12, 1996. After carefully considering the arguments of counsel, the relevant law and the record as a whole, the court finds that Defendants' Motion to Dismiss is due to be denied in part and granted in part, Plaintiffs' Motion for Partial Summary Judgment is due to be denied, and Defendants' remaining Motions are due to be denied as moot.

## BACKGROUND

Plaintiffs, who are Native American residents of Houston County, Alabama, commenced this action on May 11, 1995, by filing a Complaint against numerous Defendants, including law enforcement officials in Houston County, the Houston County Commission, the Houston County Department of Human Resources ("Houston County DHR"), and Lucia Parsons and Donna Jones Bowman [1], who at all times relevant to this action were employees of Houston County DHR. Lucia Parsons was at all times relevant to this action the County Director of the Houston County Department of Human Resources. Plaintiffs' original Complaint asserted claims pursuant to 42 U.S.C. §§ 1982 and 1983 and the laws and Constitution of the State of Alabama.

On July 7, 1995, in response to a June 13, 1995 Motion to Dismiss by Defendants Houston County DHR, Parsons, and Bowman, this court entered a Memorandum Opinion and Order dismissing with prejudice: (1) Plaintiffs' claims against Houston County DHR and Defendants Bowman and Parsons in their official capacities; (2) Plaintiffs' supplemental state law and Alabama Constitutional monetary damages claims against the Houston County DHR and Defendants Bowman

and Parsons in their official capacities. The court dismissed Plaintiffs remaining § 1983 claims without prejudice and granted Plaintiffs' leave to file an amended complaint in conformity with the Memorandum Opinion and Order. Further, the court reserved ruling on Defendants' qualified immunity and substantive immunity defenses pending a response by Plaintiffs to the court's Order that they "show cause" why Defendants Bowman and Parsons in their individual capacities are not entitled to qualified and substantive immunity for the § 1983 and state claims. Finally, the court Ordered the Plaintiffs to provide the court with authority that would allow the court to hear a claim for state constitutional violations asserted against Bowman and Parsons in their individual capacities and to identify the specific sections and subsections of the Alabama Constitution forming the basis of Plaintiffs' Alabama State Constitutional claims. *Ross v. State of Ala.,* 893 F.Supp. 1545, 1556 (M.D.Ala.1995).

On September 6, 1995, Plaintiffs filed an Amended Complaint, wherein Plaintiffs allege claims against the various Defendants pursuant to 42 U.S.C. §§ 1982, 1983, 1985(3), and 1988, as well as Article I, Sections 1, 6, and 22 of the Alabama State Constitution, and other state law.

The factual basis of Plaintiffs' Amended Complaint stems from events occurring on or about May 11, 1993. Plaintiffs allege that at on that date, Defendant Jerry Hunt, an officer of the Houston County, Alabama Sheriff's Department, unlawfully entered the Plaintiffs' residence without consent, a search warrant or probable cause that an offense had been committed. Plaintiffs further aver that later the same day Hunt and Defendant Leroy Wood, also an officer of the Houston County Sheriff's Department, and Defendant Bowman: (1) entered Plaintiffs' residence knowing that voluntary permission to enter had not been granted (Amend.Compl.¶ 32); (2) detained Plaintiff Jennifer Ross and the minor children Jessica Ross, Selina Ross and Jarred Paul Dakota Son of Two Nations Banta (Amend.Compl.¶ 32); (3) informed Plain-

1. Plaintiff's Complaint identifies "Donna Jones" as a defendant. However, Defendant subsequently filed a Motion to change the style of the case to reflect a different party name. The court granted

said Motion on December 19, 1995. Hence, the court will refer to Donna Jones as Defendant Bowman throughout this Memorandum Opinion and Order.

tiff Jennifer Ross that the minor children would be removed from the home and taken into custody (Amend.Compl.¶ 34); and (4) required that a relative, Plaintiff Debbie Woods, take the minor children into her physical custody and remove them to the State of Florida, knowing that no court order or order granting temporary protective custody for the State of Alabama existed. (Amend.Compl.¶¶ 37, 38.) Plaintiffs further allege that the Plaintiff minor children remained in Woods' physical custody in the state of Florida for approximately one to two months, where after the Plaintiff adults moved to the State of Georgia and the Plaintiff minor children returned to their parents. (Amend.Compl.¶ 40.)

Plaintiffs allege that none of the requirements of Alabama Code § 26–14–1, et seq., nor DHR regulations and procedures were complied with prior to the Plaintiff minor children being taken into the custody of Plaintiff Debbie Woods. (Amend Compl. ¶ 44.) Specifically, Plaintiffs contend, *inter alia:* (1) they never received notice, either verbal or written, that a complaint of child neglect had been lodged against them, (Compl.¶ 43); (2) no written investigative report was completed, (Compl.¶ 46); and (3) DHR conducted no home study regarding the placement of the children into the physical custody of Debbie Woods. (Amend. Compl.¶ 49.) [2]

Plaintiffs contend that Defendant Parsons, the County Director of the Houston County DHR, assigned Plaintiffs' case to Defendant Bowman, a caseworker within DHR. (Amend. Compl.¶ 42.) According to Plaintiffs, Defendant Parsons was aware of Defendant Bowman's failure to follow the relevant Alabama Code provisions and DHR regulations, and nevertheless failed to take corrective measures, provide adequate training or take disciplinary action against Bowman. (Amend. Compl.¶¶ 52, 53.)

The Complaint alleges that the Houston County DHR, Bowman and Parsons, among others, deprived Plaintiffs of various constitutional rights. Specifically, the Amended Complaint alleges that Bowman and Parsons violated Plaintiffs' rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments (Amend.Compl.¶ 59a); Plaintiffs' rights to be informed of the nature and cause of the accusation against them,' pursuant to the Sixth and Fourteenth Amendments (Amend. Compl.¶ 59b); Plaintiffs' rights not to be deprived of life, liberty or property without due process of law, and the right to equal protection of the laws, pursuant to the Fourteenth Amendment (Amend.Compl.¶ 59c); Plaintiffs' rights to privacy in their home, pursuant to the Fourth and Fourteenth Amendment and Article 1, Section 5 of the Alabama Constitution (Amend.Compl.¶ 59d); Plaintiffs' rights to be free from invasion of the familial right to privacy between parents and their children as secured by the Fourteenth Amendment (Amend.Compl.¶ 59e); and minor Plaintiffs' rights to be free from the state's restraint of their individual liberty without providing for their basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety, as secured for them under the Eighth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendment. (Amend.Compl.¶ 59f). Plaintiffs further allege that Defendants conspired to deprive Plaintiffs of said Constitutional rights, because Plaintiffs were American Indians, in violation of 42 U.S.C. § 1985(3). (Amend. Compl.¶ 60.). Additionally, plaintiffs allege various state tort claims, including outrage, negligence, assault, and false imprisonment, as well as violations of various provisions of the Alabama Constitution.

Defendants Houston County DHR, Parsons, and Bowman request that the court dismiss or grant summary judgment on all of Plaintiffs' claims against them. Plaintiffs request that the court grant partial summary judgment against Defendant Bowman.

---

**2.** Plaintiffs further allege numerous actions undertaken by Defendants Houston County Commission, Lamar Hadden as Sheriff of Houston County, Jerry Hunt both in his official capacity as an employee of the Houston County Sheriff's Department and individually, Leroy Wood both in his official capacity as an employee of the Houston County Sheriff's Department and individually, and Tommy Harper. The validity of these claims is not currently before the court. Hence, the court makes no findings whatsoever with respect to Plaintiffs' claims against these Defendants.

## MOTION TO DISMISS STANDARD

When ruling on a motion to dismiss for failure to state a claim, the court must assume that the factual allegations in the complaint are true. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Fed.R.Civ.P. 12(b)(6). Assuming that the facts are true, a complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only "if it is clear that no relief could be granted" under any set of facts that could be proved consistent with the allegations.[3] *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held that "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam,* 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir.1982)).

## DISCUSSION

### I. Defendant Houston County DHR

Defendant Houston County DHR urges the court to dismiss all of Plaintiffs' claims against it, on grounds that the court's July 6, 1995 Memorandum Opinion and Order previously addressed Plaintiffs' claims against this Defendant, and found that all claims were due to be dismissed with prejudice. *See Ross,* 893 F.Supp. at 1556. In response to Defendant Houston County DHR's Motion, Plaintiffs state that they, in fact, bring no claims against Houston County DHR in their Amended Complaint, but rather list Houston County DHR as a Party simply to be consistent and to prevent confusion. (Pls.' Mem. in Opp. at 6.) As the court has previously dismissed all of Plaintiffs' claims against Defendant Houston County DHR with prejudice, and Plaintiffs state that they bring no claims against this Defendant in their Amended Complaint, the court finds that Defendants' Motion to Dismiss Plaintiffs' claims against Defendant Houston County DHR is due to be denied as moot. Further, the court directs the Clerk of the Court to remove said Defendant from the caption of this case.

### II. Defendants Bowman and Parsons in their Official Capacities

Defendants Bowman and Parsons urge the court to dismiss Plaintiffs' claims against them in their official capacities, as all such claims were dismissed by this court in its July 9, 1995 Memorandum Opinion and Order. *See Ross,* 893 F.Supp. at 1556. Plaintiffs acknowledge this previous dismissal, and state that their Amended Complaint brings claims against Bowman and Parsons in their individual capacities only. (Pls'.Mem. in Opp. at 6, 18.) Hence, the court finds that Defendants' Motion to Dismiss with respect to Plaintiffs' claims against Defendant Parsons and Bowman in their official capacities is due to be denied as moot.

### III. Defendants Parsons and Jones in their Individual Capacities

#### A. *State Constitutional Claims*

Plaintiffs concede that there is no state remedy against individuals for violations of the Alabama State Constitution. (Pls.' Mem. in Opp. at 7, 8.) Hence, the court finds that Defendants' Motion to Dismiss is due to be granted with respect to Plaintiffs' state constitutional claims against Defendants Bowman and Parsons in their Individual capacities.

#### B. *42 U.S.C. § 1983 Claims*

■ Defendants Bowman and Parsons urge the court to dismiss Plaintiffs' § 1983 claims on numerous grounds, including failure to state a claim upon which relief can be granted and qualified immunity. Before addressing Defendants' qualified immunity defense, the court must first determine whether Plaintiffs have alleged a deprivation of a constitutional right. *County of Sacramento v. Lewis,* —— U.S. ——, —— n. 5, 118 S.Ct.

---

**3.** Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998). Once making this determination, the court will address Defendants' qualified immunity defense. *Id.*

■ Plaintiffs contend that Defendants Parsons and Bowman deprived them of numerous constitutional rights as enforced by 42 U.S.C. § 1983. Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose action(s) under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. Section 1983 itself creates no substantive rights; rather, it provides a remedy for deprivation of federal rights established elsewhere. *See Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989). Thus, in considering a Motion to Dismiss, the court must determine whether the plaintiff has asserted a cognizable claim under § 1983. *See Jordan v. Doe,* 38 F.3d 1559, 1564 (11th Cir. 1994).

■ To state a claim for relief, § 1983 litigants have the burden of alleging two elements with some factual detail: "(1) that they suffered a deprivation of 'rights, privileges or immunities secured by the Constitution and laws' of the United States," and (2) that a person "acting under color of law" caused the deprivation, either by an act or omission. *Wideman v. Shallowford Community Hosp., Inc.,* 826 F.2d 1030, 1032 (11th Cir.1987) (citation omitted). In the court's previous Memorandum Opinion and Order in this case, the court found Plaintiffs to have satisfactorily pled that Defendants Bowman and Parsons acted under color of state law. *Ross,* 893 F.Supp. at 1553. However, the court found that Plaintiffs failed to fulfill the heightened pleading requirement in alleging deprivations of underlying constitutional rights. *Id.* at 1554. The court instructed Plaintiffs to allege with specificity both the material facts upon which they base their claims, and the specific provisions of each constitutional amendment Defendants allegedly violated. *Id.* at 1554.[4]

■ As stated, once the court has determined whether Plaintiffs state a cognizable constitutional claim, the court must assess whether Defendants Bowman and Parsons are entitled to qualified immunity. The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This circuit uses a two-step analysis to determine whether qualified immunity is available. First, the defendant must show that she acted within the scope of her discretionary authority. *See Lenz v. Winburn,* 51 F.3d 1540, 1545 (11th Cir.1995). Once the defendant has so shown, the plaintiff must show that the defendant violated the plaintiff's clearly established statutory or constitutional rights. *Id.*

■ A government official acts within her discretionary authority if the actions were (1) "undertaken pursuant to the performance of [her] duties" and (2) "within the scope of [her] authority." *Lenz,* 51 F.3d at 1545 (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988)). The determination that an officer was acting within her discretionary authority is a "low hurdle" to clear. *Godby v. Montgomery Co. Bd. of Educ.,* 996 F.Supp. 1390, 1400 (M.D.Ala.1998) (Albritton, J.) (citing *Jordan v. Doe,* 38 F.3d 1559 (11th Cir.1994)). Once this determination has been made:

> plaintiffs bear the burden of showing that the federal rights allegedly violated were clearly established.... This burden is not easily discharged: "that qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities." Plaintiffs cannot carry their burden of proving the law to be clearly

---

4. Once the court identifies the specific constitutional right allegedly infringed, whether a constitutional violation has occurred can only be determined by applying the standards applicable to that particular constitutional provision. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

established by stating constitutional rights in general terms.

*Foy v. Holston,* 94 F.3d 1528, 1532 (11th Cir.1996) (quoting *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994)). In fact, the Eleventh Circuit has held:

> The most common error we encounter [in qualified immunity cases], as a reviewing court, occurs on this point: courts must not permit plaintiffs to discharge their burden [of proving the violation of a clearly established right] by referring to general rules and to the violation of abstract "rights."

*Lassiter,* 28 F.3d at 1150. "Instead, for qualified immunity to be denied, 'pre-existing law must dictate, that is, truly compel ... the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.' (additional quotation omitted)" *Flores v. Satz,* 137 F.3d 1275, 1277 (11th Cir.1998) (quoting *McMillian v. Johnson,* 88 F.3d 1554, 1562, *amended on other grounds,* 101 F.3d 1363 (11th Cir.1996)).

Here, Plaintiffs allege violations of the following constitutional rights: (1) Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures; (2) Plaintiffs' Sixth Amendment rights to be informed of the nature and cause of the accusations against them; (3) Plaintiffs' Fourteenth Amendment rights not to be deprived of life, liberty or property without due process of law; (4) Plaintiffs' Fourteenth Amendment rights to equal protection of the laws; (5) Plaintiffs' Fourth Amendment rights to privacy in their home; (6) Plaintiffs' Fourteenth Amendment rights to be free from invasion of the familial right to privacy between parents and their children; and (7) Plaintiffs' Eighth Amendment rights to be free from the state's restraint of their individual liberty without providing for their basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety. The court will now address each of the substantive constitutional violations alleged in Plaintiffs' Amended Complaint to determine whether they sufficiently state a claim. Where the court determines that Plaintiffs' allegations sufficiently allege a constitutional violation, the court will then determine whether Defendant is entitled to qualified immunity on that claim.

### 1. Defendant Bowman

#### a. Fourth Amendment Right to be Free from Unreasonable Search and Seizure

■ Plaintiffs contend that Defendant Bowman violated their Fourth Amendment rights to be free from unreasonable searches and seizures. Specifically, Plaintiffs allege:

> Without search or arrest warrants or other legal process directing or authorizing a search or investigation and without prior permission to enter or search the premises, defendant[ ] [Bowman], knowing that voluntary permission to enter had not been granted, and that entry was being made under the threat of arrest, entered and searched each of the plaintiffs' residences and detained plaintiff, Jennifer Ross, and the minor children, Jessica Ross, Selina Ross and Jarred Paul Dakota Son of Two Nations Banta, at their residence.

(Amend.Compl.¶ 32.)

■ The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. 4. The Fourth Amendment's protection "unquestionably extends beyond criminal investigations to civil and administrative contexts." *Lenz v. Winburn,* 51 F.3d 1540, 1548 n. 7 (11th Cir.1995) (citing *Soldal v. Cook County, Ill.,* 506 U.S. 56, 66 n. 11, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992); *O'Connor v. Ortega,* 480 U.S. 709, 714, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987); *Camara v. Municipal Court,* 387 U.S. 523, 534, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). It is well-settled that searches and seizures inside a home without a warrant are presumptively unreasonable and in violation of the Fourth Amendment, absent exigent circumstances. *See Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *Lenz,* 51 F.3d at 1548. Accordingly, assuming the facts alleged in Plaintiffs' Complaint are true, the court finds that Plaintiffs have sufficiently stated a Fourth Amendment violation against Defendant Bowman.

■ However, the court finds that Defendant Bowman is nevertheless entitled to qualified immunity on this claim, as Plaintiffs have failed to show that a reasonable person in Defendant Bowman's position would have known that she was imposing on Plaintiffs' Fourth Amendment rights. In making this determination, the court notes the Eleventh Circuit's opinion in *Lenz v. Winburn*, 51 F.3d 1540 (11th Cir.1995). In that case, a child's grandparents brought a § 1983 action against a social worker for allegedly violating their Fourth Amendment rights when the social worker entered their house and retrieved some belongings of the child when the child was being removed from her father's custody after an investigator for the Florida Department of Health and Human Services concluded that the child was being abused. *Lenz,* 51 F.3d at 1543, 1550.

First, the Eleventh Circuit concluded that the social worker was acting within her discretionary authority when she entered the home and collected the child's personal belongings, as Florida law permits state social workers to take children into protective custody if an investigator determines it necessary to protect the child. *Lenz,* 51 F.3d at 1551. Then, the Eleventh Circuit examined whether the social worker violated a clearly established right by entering the plaintiffs' home and seizing some of the child's belongings. *Lenz,* 51 F.3d at 1551. In finding that the social worker was entitled to qualified immunity, the court stated:

> The Fourth Amendment prohibits only unreasonable searches. Unreasonableness is determined by a case-by-case balancing of the state's interests against the individual's. (citations omitted) In the Fourth Amendment context, therefore, the law of qualified immunity provides that [the social worker] need not predict whether the interest of the state in retrieving personal effects for a child's comfort will be deemed to outweigh the privacy interests of the suspected abusers. Neither must she err on the side of caution and assume that such searches are unreasonable. *See Lassiter,* 28 F.3d at 1149.

*Lenz,* 51 F.3d at 1551–52. Hence, the Eleventh Circuit found that the defendant social worker was entitled to qualified immunity on the Fourth Amendment claim. *Id.*

Under Alabama law, DHR, its agents and employees have wide-ranging duties and responsibilities where there are reports that a child's welfare is in jeopardy. For example, DHR is charged with making investigations upon oral or written reports of child abuse, Ala.Code § 26–14–7 (1975), and DHR is authorized to take a child into protective custody initially and without the consent of the child's parents if the circumstances are such that continuing custody with the parents presents an imminent danger to the child's life or health. Ala.Code § 26–14–6 (1975); *Foy,* 94 F.3d at 1530. The court finds that, here, Defendant Bowman's decisions concerning the Plaintiff minor children's care involved the exercise of her professional judgment and discretion. Hence, the court finds that her actions were within the scope of her discretionary authority when she allegedly engaged in the actions asserted by Plaintiffs.

Assuming that Plaintiffs' allegations concerning Defendant Bowman's actions are true, here, as in *Lenz,* the state's social worker was obligated, under state law, to assess the validity of reports concerning the Plaintiff minor children's welfare and to take appropriate action. *Lenz,* 51 F.3d at 1551. In light of *Lenz* and absent any case law cited by Plaintiffs to the contrary, the court finds that it is not sufficiently clear that the Fourth Amendment prohibits as unreasonable entries such as Defendant Bowman's, nor is it sufficiently clear that Defendant's alleged "detainment" of the Plaintiff minor children was unreasonable in violation of the Fourth Amendment. Accordingly, the court finds that Defendants' Motion to Dismiss Plaintiff's claims against Defendant Bowman with respect to her § 1983 claims for Fourth Amendment violations is due to be granted.

b. Violations of Plaintiffs' Sixth Amendment Rights to be Informed of the Nature of the Accusation Against them

■ Plaintiffs allege that Defendant Bowman failed to inform Plaintiffs of the nature and causes of action against them and took action against them without arrest or formal charges being brought, in violation of the Sixth Amendment. (Amend.Compl.¶ 32–40.)

The Sixth Amendment of the United States Constitution requires that in every

criminal prosecution the accused shall be informed of the nature and cause of the accusation against him or her. U.S. Const. amend VI. Here, Plaintiffs do not allege that Defendant Bowman caused Plaintiffs to be criminally prosecuted. Indeed, Plaintiffs were not arrested. Plaintiffs fail to cite to any authority to support a Sixth Amendment claim in this context. Hence, the court finds that Plaintiffs fail to state a § 1983 claim for violation of the Sixth Amendment, and Defendant's Motion to Dismiss on this claim is due to be granted. *See GJR Investments, Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1367 (11th Cir.1998).

### c. Plaintiffs' Due Process Rights

Plaintiffs allege that Defendant Bowman deprived them of their due process rights, in violation of the Fourteenth Amendment. (Amend.Compl.¶ 59c). Specifically, Plaintiffs contend that Defendant Bowman violated their due process rights by failing to follow the mandates of Alabama Code section 26–14–1, et seq. (Pls.' Mem. in Opp. at 13 (citing Amend Compl. ¶¶ 32–40; 43–45; 48–52)). Ala.Code § 26–14–1, et seq. provides for procedures for investigating and reporting allegations of child abuse, as well as

procedures that are to be followed prior to taking a child into protective custody.[5]

■■■ The Fourteenth Amendment of the United States Constitution protects against deprivation by state action of a constitutionally protected interest in "life, liberty or property" without the due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Due Process clause provides two different kinds of constitutional protections: procedural due process and substantive due process. *McKinney v. Pate,* 20 F.3d 1550, 1555 (11th Cir.1994). Substantive due process protects those rights that are "fundamental," that is, rights contemplated by the Federal Constitution as "implicit in the concept of ordered liberty." *Id.* at 1556. Areas in which substantive due process rights are created only by state law are not subject to substantive due process protection under the Due Process clause, but rather procedural due process. *Id.* at 1556.

Here, Plaintiffs allege that Defendant violated both their substantive and procedural due process rights by failing to follow the mandates of Ala.Code § 26–17–1 et seq. (Pls.' Mem. in Opp. at 13.)[6] Plaintiffs contend

---

5. Ala.Code §§ 26–14–1 through 13 (1975), concern child abuse and neglect. Section 26–14–6 states, in relevant part:

> A police officer, a law enforcement official or a designated employee of the state or county department of human resources may take a child into protective custody ... without the consent of the parent or guardian.... However, such official shall immediately notify the court having jurisdiction over juveniles of such actions in taking the child into protective custody; provided, that such custody shall not exceed 72 hours and that a court of competent jurisdiction and the department of human resources shall be notified immediately in order that child-protective proceedings may be initiated.

Ala.Code § 26–14–6 (1975).

> Section 26–14–7 states, in relevant part:
> (a) The state or county department of human resources shall make a thorough investigation promptly upon either the oral or written report. The primary purpose of such an investigation shall be the protection of the child.... (c) The investigation may include a visit to the child's home, an interview with the subject child, and may include a physical, psychological or psychiatric examination of any child or children in that home. If the admission to the home, school or any other place that the child may be, or permission of the parent or other

persons responsible for the child or children, for the physical, psychological or psychiatric examination, cannot be obtained, then a court of competent jurisdiction, upon cause shown, shall order the parents or persons responsible and in charge of any place where the child may be to allow the interview, examinations and investigation. If, before the examination is complete, the opinion of the investigators is that immediate removal is necessary to protect a child or children from further abuse or neglect, a court of competent jurisdiction, on petition by the investigators and with good cause being shown, shall issue an order for temporary removal and custody.

Ala.Code § 26–14–7 (1975).

6. Plaintiffs have previously been Ordered to state specifically the protected life, liberty and or property interest infringed upon, as well as how the Defendant has acted in violation of said provision. *Ross,* 893 F.Supp. at 1554. While Plaintiffs' Amended Complaint pleads individual facts more specifically, Plaintiffs have failed to state how, in particular, these facts violate Plaintiff's due process rights. Accordingly, the court will rely upon Plaintiffs' Memorandum in Opposition to Defendants' Motion to explain the way in which Plaintiffs' allegations relate to their due process claim.

that Defendant Bowman failed to follow the relevant procedures prior to placing the plaintiff minor children into the physical custody of Debbie Woods. (Amend.Compl.¶ 49.) The court construes Plaintiffs' Complaint to allege that Defendant's failure to follow these procedures deprived them of substantive due process rights in that said failure resulted in a loss of liberty. Plaintiffs fail to state, however, what liberty interest they were deprived of. Paragraph 59e of Plaintiffs' Amended Complaint asserts that Defendants violated Plaintiffs' right "to be free from invasion in the familial right to privacy between parents and their children as secured by the Fourteenth Amendment." (Amend. Compl.¶ 59e.) The court construes this as a claim of deprivation of Plaintiffs' substantive liberty interest in family privacy. Further, Plaintiffs' Complaint asserts that Defendants violated Plaintiffs' rights to be free from the state's restraint of their individual liberty without providing for their basic human needs, "as is secured for them under the Eighth Amendment and the Due Process Clause." (Amend.Compl.¶ 59f.) For the reasons stated, *infra*, the court construes this assertion as a claim of violation of Plaintiffs' substantive liberty interests, pursuant to the Fourteenth Amendment, as well. The court will address the viability of each of these substantive due process claims later in its discussion.

The court now turns to Plaintiffs' claim of deprivation of procedural due process. To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. *Bank of Jackson County v. Cherry*, 980 F.2d 1362, 1366 (11th Cir.1993). The sine qua non of a due process claim is that the plaintiff has a recognized "life, liberty, or property" interest within the purview of the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, the threshold inquiry for the court is whether Plaintiffs state a deprivation of a recognized interest.

Again, Plaintiffs contend that Defendant Bowman deprived them of their life, liberty or property interests by failing to adequately follow the requirements of Ala. Code § 26–17–1, et seq. (Amend.Compl. ¶ 59c.) The Eleventh Circuit has stated that where a comprehensive child welfare statute creates a legitimate and sufficiently vested claim of entitlement, children may state a procedural due process claim based upon a deprivation of a liberty interest when officials fail to follow the law's mandates. *Taylor v. Ledbetter*, 818 F.2d 791, 799 (11th Cir.1987) (citing *Roth*, 408 U.S. at 572, 92 S.Ct. 2701). The court must look to state law to determine whether the statutes at issue "indicate an intention to bestow benefits upon children placed by the state in foster homes," such that these benefits give rise to a legitimate and vested claim of entitlement for procedural due process purposes. *Taylor*, 818 F.2d at 798.[7]

The legislative purpose for enacting the Child Abuse Reporting Act, Ala.Code § 26–14–1 et seq., is as follows:

In order to protect children whose health and welfare may be adversely affected through abuse and neglect, the legislature hereby provides for the reporting of such cases to the appropriate authorities. It is the intent of the legislature that, as a result of such efforts, and through the cooperation of state, county, local agencies and divisions of government, protective services shall be made available in an effort to prevent further abuses and neglect, to safeguard and enforce the general welfare of such children, and to encourage cooperation among the states in dealing with the problems of child abuse.

Ala.Code § 26–14–2 (1975); *C.B. v. Bobo*, 659 So.2d 98, 101 (Ala.1995). The Alabama Supreme Court has held that the Child Abuse Reporting Act does not confer a private right of action for any breach of duty to

---

**7.** In *Taylor*, the Eleventh Circuit examined Georgia law governing child welfare and determined that the statute "provided more than just 'procedural guidelines' to be followed in arriving at decisions." *Taylor*, 818 F.2d at 799. Rather, the court found that the Georgia scheme "mandates that officials follow guidelines and take affirmative actions to ensure the well being and promote the welfare of children in foster care." *Taylor*, 818 F.2d at 799.

report child abuse or neglect, as imposed by the statute, *C.B.*, 659 So.2d at 102. Hence, it would appear that Ala.Code 26–14–1 et seq. does not create an entitlement for the children effected for purposes of stating a procedural due process claim. In so far as Plaintiffs attempt to state a claim for the deprivation of the Plaintiff minor children's procedural due process rights, the court finds that such claims must fail.

 However, Plaintiffs also appear to attempt to state a claim for the violation of the *parent's* procedural due process rights, rather than the *children's* due process rights.[8] Hence, the court must determine whether Ala.Code § 26–14–1 et seq. entitles the Plaintiff *parents* to any procedural protections.

In *Farina v. City of Tampa*, 874 F.Supp. 383 (M.D.Fla.1994), the district court found that city police officers violated a plaintiffs' due process rights when they returned a child to its biological mother without conducting a pre-deprivation hearing pursuant to Florida law. In that case, the court determined that the plaintiffs stated a procedural due process claim because they had a liberty interest entitlement under a relevant Florida statute. *Farina*, 874 F.Supp. at 385. Specifically, the court found that the Florida statute at issue "clearly indicates an intent on the part of the legislature to afford certain rights to persons with physical custody. Pursuant to the statute, Plaintiffs were entitled to reasonable notice and an opportunity to be heard before Defendants determined that [the child] should be placed in [his mother's] custody." *Farina*, 874 F.Supp. at 386. Thus, the court found that there existed a liberty interest with which the state interfered, thus satisfying the first prong of a prima facie claim for procedural due process. *Farina*, 874 F.Supp. at 386.

The Alabama Court of Civil Appeals has indicated that individuals are entitled to certain procedural protections prior to being investigated for child abuse. In *H.R. v. State Dep't of Human Resources*, 612 So.2d 477, 479 (Ala.Civ.App.1992), the court stated that:

The legislature in enacting § 26–14–7 provided for an investigation of written or oral reports of abuse or dependency of children. It provided that the investigation may include an examination of the home where the child resides and an interview with the child in the home. It recognized that permission from the person responsible for the child is to be obtained before the examination or interview. It is to be logically assumed that in the great majority of such investigations, permission for entry to the home is not denied. However, if such denial occurs, as in this case, the legislature, aware of the right of privacy of a person's home and the protection provided by the Fourth Amendment of the United States Constitution and Article 1, ¶ 5 of the Alabama Constitution ... provided a proper solution to the problem of such denial. The legislature said "if admission to the home ... cannot be obtained, then a court of competent jurisdiction, *upon cause shown,* shall order the parents ... to allow ... the investigation."

*H.R.*, 612 So.2d at 479. Subsequent to this decision by the Alabama Court of Appeals, the Alabama legislature enacted Ala.Code § 26–14–7.1, which delineates specific "due process" rights for those accused of abuse and neglect. Ala.Code § 26–14–7.1 (1975) (1997 Supp.). These include rights to written notice, and the right to a hearing. *Id.* Accordingly, the court finds that Plaintiffs have stated a deprivation of the Plaintiff parents' recognized liberty interest sufficient to state a procedural due process claim.

 However, in assessing the validity of Plaintiffs' procedural due process claim, the court's inquiry does not rest here. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). A constitutional violation claim under § 1983 is not complete

8. The Amended Complaint does not clearly state whose procedural due process rights Plaintiffs are asserting. The Amended Complaint merely states "[t]he right of plaintiffs not to be deprived of life, liberty, or property without due process of law...." (Amend.Compl.¶ 59c.)

unless and until the State fails to provide due process. *Id.* Hence, the court must next determine whether Plaintiffs have alleged that the procedures attendant upon their liberty deprivation were constitutionally adequate; such a determination must examine the procedural safeguards built into the statutory or administrative procedure at issue, and any remedies for erroneous deprivations provided by statute or tort law. *Id.*

Here, Plaintiffs allege that Defendant Bowman deprived them or their procedural due process rights by failing to follow the mandates of Ala.Code § 26–14–1, et seq. Specifically, Plaintiffs contend that Defendant Bowman: (1) informed Plaintiff Jennifer Ross that the Plaintiff minor children would be removed from the home and taken into custody, absent a court order being obtained (Amend.Compl.¶ 34); and (2) required Plaintiff Debbie Woods to take the Plaintiff minor children into her physical custody and move them to the state of Florida, absent any court order of temporary or protective custody. (Amend.Compl.¶ 37). Plaintiffs contend that the children remained with Woods for approximately one to two months. (Amend. Compl.¶ 40.) Plaintiffs further contend that they never received notice, either verbal or written, that a complaint of neglect of the children had been lodged against them, (Amend.Compl.¶ 43), despite the fact that Alabama law requires that the Defendants investigate and file a written report of such allegations, and that the Defendants may only remove the Plaintiff minor children for "cause shown." (Amend.Compl.¶ 44.) Further, Plaintiffs allege that Defendant Bowman failed to complete a written investigative report or compile written recommendations, pursuant to the mandates of Ala.Code § 26–14–1 et seq., and failed to conduct a home study or obtain any type of court order prior to placing the children in the physical custody of Debbie Woods.

(Amend.Compl.¶¶ 45–51.)

The court finds that, despite these allegations, Plaintiffs have failed to show an inadequate remedy. In so finding, the court is bound by the Eleventh Circuit's recent decision in *Powell v. Georgia Dep't of Human Services,* 114 F.3d 1074 (11th Cir.1997). In that case, the plaintiff sued employees of the Richmond County Department of Family and Children Services under § 1983 for the death of his infant son, claiming, *inter alia,* that the defendants violated his son's procedural due process rights in their failure to follow the Richmond County Child Abuse Protocol ("the Protocol"). *Powell,* 114 F.3d at 1080. In rejecting this claim, the Eleventh Circuit held that the plaintiff failed to state a procedural due process claim because the State provided him with adequate post-deprivation process, as the plaintiff was free to pursue a damage claim in state court under state tort law. *Powell,* 114 F.3d at 1074.

In so finding, the Eleventh Circuit distinguished the facts at issue in *Powell* from those at issue in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). There, the Supreme Court held that the plaintiff, a former state mental health hospital patient, brought a § 1983 claim for procedural due process violations for the state's alleged failure to have in place appropriate pre-commitment safeguards to ensure that mental hospital patients are in fact competent to sign forms authorizing their voluntary admission and treatment. *Zinermon,* 494 U.S. at 115. The Court held that the plaintiff stated a procedural due process claim because the deprivation of the plaintiff's liberty was predictable and a pre-deprivation process was feasible. *Zinermon,* 114 F.3d at 136.

In contrast, the Eleventh Circuit held that the facts at issue in *Powell* were more analogous to those at issue in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *Powell,* 114 F.3d at 1081. In those cases, the Supreme Court held that there is no procedural due process violation when the act complained of is the random and unauthorized act of a state employee for which post-deprivation process is available. *Powell,* 114 F.3d at 1081 (citing *Hudson,* 468 U.S. at 533, 104 S.Ct. 3194; *Parratt,* 451 U.S. at 541, 101 S.Ct. 1908). In *Powell,* the Eleventh Circuit held that the Protocol already provided pre-deprivation procedures for caseworkers to follow; no other feasible predeprivation procedure was apparent. *Powell,* 114 F.3d at 1082. Because the plaintiffs in *Powell* could

bring state tort claims against the defendants, they were similarly provided with adequate post-deprivation remedies. *Powell,* 114 F.3d at 1082.

Here, as in *Powell,* Plaintiffs do not appear to be challenging the adequacy of Ala.Code § 26–14–1 et seq.; rather, Plaintiffs argue that Defendant Bowman did not follow the mandates of the statute. *See Powell,* 114 F.3d at 1082. Hence, Plaintiffs offer no alternative predeprivation procedure that Defendant Bowman could have or should have followed. Instead, Plaintiffs contend that Defendant's failure to follow the requirements of the statute deprived them of their liberty interests. Here, too, as in *Powell,* Plaintiffs may bring claims under Alabama state tort law, which Plaintiffs have chosen to bring in conjunction with their federal claims.[9] Hence, the court finds that Plaintiffs have failed to state a procedural due process deprivation, and Defendants' Motion to Dismiss Plaintiffs' procedural due process claim as to Defendant Bowman is due to be granted.

■ In addition and in the alternative, the court finds that, even if Plaintiffs did state a claim for procedural due process, Defendant Bowman is immune from such claims pursuant to the doctrine of qualified immunity. *See Powell,* 114 F.3d at 1082–83 (court cannot conclude that there was a clearly established constitutional right to some additional predeprivation procedure or that it was clearly established that an additional predeprivational procedure was feasible); *Foy,* 94 F.3d at 1532 n. 4 ("Defendants cannot be said to have violated clearly established federal law simply by failing … to follow provisions of the Alabama code or state regulations which govern child custody matters.").

### d. Violation of Equal Protection of the Law

■ Plaintiffs contend that Defendant Bowman violated their rights to equal protection of the laws. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. 14. "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.' " *Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989) (quoting *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Thus, to establish an equal protection claim, a plaintiff must initially show that he or she was treated differently from other individuals similarly situated. *Cleburne,* 473 U.S. at 439, 105 S.Ct. 3249.

■ Nowhere in Plaintiffs' Amended Complaint is any differential treatment by Defendant Bowman alleged. Plaintiffs state that they are Native American Indians. (Amend.Compl.¶ 19.) Plaintiffs further allege discrimination on the basis of race, color and ethnicity on the part of Defendant Tommy Harper. (Amend.Compl.¶¶ 56, 57.) However, Plaintiffs make no allegations of discrimination on the basis of race, color or ethnicity with respect to Defendant Bowman. Further, Plaintiffs make no allegations whatsoever regarding their differential treatment vis a vis similarly situated individuals. Hence, the court finds that Plaintiffs have failed to allege a claim of violation of Equal Protection; accordingly Plaintiffs' Section 1983 claims based on the Equal Protection Clause are due to be dismissed. *See GJR Investments, Inc.,* 132 F.3d at 1367 (affirming district court's dismissal of equal protection claim where plaintiff's complaint failed to allege unequal treatment or discriminatory motive on behalf of defendant).

### e. Violations of Plaintiffs' Fourth Amendment Rights to Privacy in their Home

Plaintiffs assert that Defendant Bowman violated their Fourth Amendment Rights to privacy in their own home. (Amend. Compl.¶ 59d.) The court finds that this claim is a derivative of Plaintiffs' Fourth Amendment claim for warrantless search and seizure. *See Lenz,* 51 F.3d at 1548 (citizens' security in their homes lies at the core of the

---

**9.** The court notes that any possible immunity of Defendants to Plaintiffs' state law claims has no bearing on the adequacy of post deprivation process provided by Plaintiffs' possible state law claims. *Powell,* 114 F.3d at 1082 n. 11.

Fourth Amendment, hence a violation of this right infringes upon a person's reasonable expectation of privacy). For the reasons set forth above, the court finds that Plaintiffs' Section 1983 claim for violation of their Fourth Amendment rights is due to be dismissed.

f. Plaintiffs' Fourteenth Amendment Rights to be Free From Invasion of the Familial Right to Privacy Between Parents and Their Children

Plaintiffs allege that Defendant Bowman's actions violated Plaintiffs' rights to be free from invasion of the familial right to privacy between parents and their children as secured by the Fourteenth Amendment of the United States Constitution. (Amend. Compl.¶ 59e.) The Supreme Court, in various situations, has recognized a fundamental liberty interest in familial integrity and preserving the family unit. *See e.g. Lehr v. Robertson*, 463 U.S. 248, 258, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (unwed father's fundamental right in the care and custody of a child); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) (parents' right to care, custody, management and companionship of their minor children); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (parents' fundamental interest in religious upbringing); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (parents' fundamental interest in their children's education). *See also Foy*, 94 F.3d at 1536. The Eleventh Circuit has stated that, in order to prevail on a claim of family privacy, parents need to prove that a state actor interfered with a protected liberty interest without sufficient justification. *Foy*, 94 F.3d at 1536.

Here, Plaintiffs allege that Defendant Bowman "unjustifiably" interfered with the integrity of their family unit when, absent any written investigative report, home study, formal complaint, or order granting custody, she required that the Plaintiff minor children be removed from their parents and placed in the custody of Plaintiff Debbie Woods. (Amend.Compl.¶¶ 37–51.) Accordingly, the court finds that, for purposes of this Motion only, Plaintiffs have sufficiently alleged a claim of violation of their "familial

right to privacy" pursuant to the Fourteenth Amendment.

However, the court nevertheless finds that Plaintiffs fail to overcome Defendant Bowman's claim of qualified immunity on this claim. The Eleventh Circuit has stated that "family relationships are an area of state concern, and the state has a compelling interest in removing children who may be abused." *Foy*, 94 F.3d at 1536 (citing *Myers v. Morris*, 810 F.2d 1437, 1462 (8th Cir.1987)). Further, the court has stated that:

> Violations of the right to family association are determined by a balancing of competing interests.... So, state officials who act to investigate or to protect children where there are allegations of abuse almost never act within the contours of "clearly established law."

*Foy*, 94 F.3d at 1536 (internal citations and quotations omitted).

DHR has wide-ranging duties and responsibilities under Alabama law where there are reports that a child's welfare is in jeopardy. *Foy*, 94 F.3d at 1530 n. 2. Here, Defendant Bowman, as a DHR social worker, is charged with the responsibility of protecting children in investigations of abuse and/or neglect. Ala.Code § 26–14–1, et seq. DHR is authorized to take a child into protective custody, initially, without the consent of the child's parents, if the circumstances are such that continuing custody with the parents presents an imminent danger to the child's life or health. Ala.Code § 26–14–6; *Foy*, 94 F.3d at 1530 n. 2. Plaintiffs concede that Defendant Bowman acted pursuant to a report accusing Plaintiffs of child neglect. (Amend. Compl.¶ 41.) Although Plaintiffs allege that said report was "erroneous and false," (Amend.Compl.¶ 41), Defendant Bowman nevertheless is charged with responding to such reports and taking action as she deems appropriate. *See* Ala.Code § 26–14–7. Accordingly, the court finds that Defendant Bowman was acting with her discretionary authority. Further, in light of the Eleventh Circuit's holding that state actors responding to allegations of abuse almost never act within the contours of "clearly established law," and in light of Plaintiffs' failure to point to

any clearly established law to support their proposition that reasonable persons in Defendant's position would know that they were in violation of Plaintiffs' rights to familial integrity, the court finds that Defendant Bowman is entitled to qualified immunity on this claim; Plaintiffs' Fourteenth Amendment claim on this ground is due to be dismissed.

### g. Violation of Plaintiffs' Eighth Amendment Rights

Plaintiffs contend that Defendant Bowman violated the Plaintiff minor children's Eighth Amendment Rights to be free from the state's restraint of their individual liberty without providing for their basic human needs, e.g., food, clothing, shelter, medical care, and reasonable safety. (Amend. Compl.¶ 59f.) Plaintiffs contend that this claim stems from the fact that Defendant Bowman's "constructive removal" of the minor Plaintiffs from their parents' custody without formally establishing the dependency of the minor children left them in "constructive foster placement" without the state providing for their care. (Pls.' Mem. in Opp. at 13.)

In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that the Eighth Amendment prohibition against cruel and unusual punishment, applicable to the States through the Fourteenth Amendment, requires states to provide medical care to incarcerated prisoners. Specifically, the Court reasoned that because the prisoner is unable "by the reason of the deprivation of his liberty [to] care for himself," it is only "just" that the State be required to take care of him. *Estelle,* 429 U.S. at 103, 97 S.Ct. 285 (citations omitted).

The Supreme Court extended this analysis beyond the Eighth Amendment context in *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982). There, the Court held that an involuntarily committed mental patient retains a liberty interest to be protected substantively under the due process clause, and thus the State is required to provide "reasonable safety" to these patients. *Youngberg,* 457 U.S. at 324, 102 S.Ct. 2452. Further, the Court held that the State must also provide "adequate food, shelter, clothing and medical care." *Id.* The Eleventh Circuit has applied this rationale to recognize a liberty interest where a child is involuntarily placed in a foster home. *Taylor v. Ledbetter,* 818 F.2d 791 (11th Cir.1987) (en banc). Specifically, the Eleventh Circuit has held that a child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution and a child confined in a mental health facility that the foster child may bring a Section 1983 action for violation of Fourteenth Amendment rights. *Taylor,* 818 F.2d at 797. The court assumes that Plaintiffs' claims under the Eighth Amendment and Due Process clause of the Fourteenth Amendment is meant to state a substantive liberty interest under the Fourteenth Amendment, analogous to the liberty interest in *Estelle, Youngberg,* and *Taylor.*

The court finds that, for purposes of this Motion to Dismiss only, Plaintiffs have alleged a "special relationship" between the state and the plaintiff minor children giving rise to a *Taylor*-type Section 1983 claim. Specifically, the court finds, for purposes of this Motion only, that Plaintiffs have alleged that the Plaintiff minor children were in a foster care relationship with the state. In a foster care situation, the state places the child, whether voluntarily or not, into the care of persons the state has chosen. *Wooten v. Campbell,* 49 F.3d 696, 699 (11th Cir. 1995). These foster families provide for the child's physical needs on behalf of the state. *Id.* The state exercises control and dominion over the child in a foster care situation, giving rise to a foster care child's Section 1983 claim for a violation of a constitutional right if the child is injured by his or her foster family. *Wooten,* 49 F.3d at 699 (citing *Taylor,* 818 F.2d 791).

Here, Plaintiffs contend that Defendant Bowman threatened Plaintiffs that their children would be removed from the home and taken into custody. (Amend.Compl.¶ 34.) Plaintiffs further contend that, out of fear and confusion, they telephoned a relative, Plaintiff Debbie Woods, and Defendant Bowman "required" Woods to take the children into her physical custody and remove them to the state of Florida, where the children remained for approximately one to two months. (Amend.Compl.¶¶ 36, 37, 40.) Although Plaintiffs state that no order granting protective or temporary custody of the children to

the State of Alabama or Debbie Woods was ever sought or obtained by any employee or agent of Houston County DHR, (Amend. Compl.¶¶ 50, 51), they nevertheless contend that Defendant Bowman's actions resulted in "constructive" foster case placement with Debbie Woods. (Pls.' Mem. in Opp. at 13.) Assuming these allegations are true, and drawing all inferences arising from them in favor of Plaintiffs, the court finds that, for purposes of this Motion only, Plaintiffs have alleged that Defendant Bowman effectively placed the Plaintiff minor children in the custody of Debbie Woods, thus giving rise to a special relationship analogous to a foster care relationship.

▮ Nevertheless, the court finds that Plaintiffs have failed to allege that the plaintiff minor children suffered any deprivation of their "basic needs" while in Debbie Woods' custody. In discussing the necessary elements of a Section 1983 claim for deprivation of liberty in a foster care situation, the Eleventh Circuit has stated that defendants may be held liable under Section 1983 if they exhibited deliberate indifference to a known injury, a known risk, or a specific duty and their failure to perform the duty or act to ameliorate the risk of injury was a proximate cause of the plaintiff's deprivation of rights under the constitution. *Taylor*, 818 F.2d at 797. "Only where it is alleged and the proof shows that the state officials were deliberately indifferent to the welfare of the child will liability be imposed." *Id.*

Here, Plaintiffs have alleged that Defendant Bowman deprived minor Plaintiffs of freedom from the "state's restraint of their individual liberty without providing for their basic needs, e.g., food, clothing, shelter, medical care, and reasonable safety, as is secured for them under the Eighth Amendment and the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution." (Amend.Compl.¶ 59f.) However, nowhere in Plaintiffs' pleadings does the court find any facts giving rise to this allegation; nor do Plaintiffs allege that

Defendant Bowman was "deliberately indifferent" to any such deprivation of basic needs while the children were in Debbie Woods' custody.

▮ Hence, the court finds that Plaintiffs have failed to plead this claim with the requisite specificity. Generally, the Federal Rules of Civil Procedure impose minimal pleading standards and require only "a short and plain statement showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, as this court has previously reminded Plaintiffs, a more stringent pleading standard is required to state a claim under § 1983. *GJR Investments, Inc.*, 132 F.3d at 1367; *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir.1984). Specifically, the Eleventh Circuit has stated that in civil rights actions, courts may dismiss a complaint "as insufficient where the allegations it contains are vague and conclusory." *Fullman*, 739 F.2d at 556–57 (citations omitted). Further, the Eleventh Circuit has stated that in all complaints where liability is predicated upon § 1983, "some factual detail is necessary" and that this "heightened Rule 8 requirement—as the law of the circuit—must be applied by the district courts." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.1992); *see also GJR Investments, Inc.*, 132 F.3d at 1368 ("We stress at this point .. that the heightened pleading requirement is the law of this circuit."). The Eleventh Circuit explained that " 'in an effort to eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims, we, and other courts, have tightened the application of Rule 8 to § 1983 claims.' " *Oladeinde*, 963 F.2d at 1485 (quoting *Arnold v. Board of Educ. of Escambia County*, 880 F.2d 305, 309 (11th Cir.1989)). Pleading with specificity is particularly important where, as here, a defendant asserts the defense of qualified immunity, and the court must decide whether the conduct complained of violates a "clearly established" constitutional or federal statutory right. *GJR Investments, Inc.*, 132 F.3d at 1367.[10]

---

**10.** Admittedly, the viability of the Eleventh Circuit's heightened pleading requirement for § 1983 claims has been significantly called into doubt by a recent Supreme Court decision that rejected a District of Columbia Circuit rule that required heightened proof of improper intent for

constitutional claims. *See Crawford–El v. Britton*, —— U.S. ——, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998). Specifically, the Court indicated in *Crawford–El v. Britton* that it has "consistently declined ... invitations to revise established

The court has previously allowed Plaintiffs to amend their Complaint to state their Section 1983 claims with the requisite specificity. *Ross*, 893 F.Supp. at 1554. Accordingly, the court finds that Plaintiffs failure to state a claim for deprivation of liberty for failure to provide for Plaintiff minor children's basic needs necessitates dismissal of this claim.

### 2. Defendant Parsons

 Plaintiffs also bring § 1983 claims against Defendant Bowman's supervisor, Defendant Parsons. A supervisor may not be held liable pursuant to § 1983 for a constitutional violation on the basis of respondeat superior, but only on the basis of his or her wrongful behavior. *See Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir.1985). "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [or she] fails to do so." *Dolihite v. Maughon*, 74 F.3d 1027, 1052 (11th Cir.1996) (quoting *Cross v. State of Alabama*, 49 F.3d 1490, 1508 (11th Cir.1995) (internal quotations omitted)).

 Courts within the Eleventh Circuit employ the following three-prong test to determine a supervisor's liability: "(1) whether, in failing adequately to train and supervise

rules that are separate from the qualified immunity defense," and thus, in line with this practice, it is not the role of the courts to fashion heightened requirements. *Id.* at 1595. "[Q]uestions regarding pleading, discovery, and summary judgment are most frequently and most effectively resolved either by the rulemaking process or the legislative process." *Id.* (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

However, the court declines to determine whether the Eleventh Circuit's requirement that plaintiffs plead with some factual detail allegations in § 1983 claims survives *Crawford–El v. Britton.* Compare *Florida League of Professional Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir.) (a court panel was "not at liberty to disregard binding case law that is so closely on point and has only been weakened"), *cert. denied,* —— U.S. ——, 117 S.Ct. 516, 136 L.Ed.2d 405 (1996); *United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir.) ("even where it has been weakened, but not overruled, by a Supreme Court decision, prior panel precedent must be followed"), *cert. denied,* —— U.S. ——, 118 S.Ct. 614, 139 L.Ed.2d 500 (1997), with *Cottrell v. Caldwell*, 85 F.3d 1480, 1484–85 (11th Cir.1996) (Because applicable prior circuit decisions "preceded [a Supreme Court decision] and cannot be reconciled with it," the Supreme Court decision must be followed.); *United States v. Shenberg*, 89 F.3d 1461, 1480 n. 23 (11th Cir.1996) (court declined to apply a prior panel decision in light of a more recent Supreme Court ruling that explicitly rejected the rationale underlying the prior decision), *cert. denied,* —— U.S. ——, 117 S.Ct. 961, 136 L.Ed.2d 847 (1997).

Specifically, the court notes that *Crawford–El* focused on the District of Columbia Circuit rule imposing a "clear and convincing" burden of proof in cases alleging unconstitutional motive in light of a defendant's qualified immunity defense.

*Crawford–El,* —— U.S. at ——, 118 S.Ct. at 1595. In contrast, here the court is faced with explicit Eleventh Circuit precedent regarding the need for pleading § 1983 claims with some factual detail, rather than in a vague and conclusory manner. *GJR Investments, Inc.*, 132 F.3d at 1368. As the Eleventh Circuit notes, the Supreme Court previously held that such a heightened pleading requirement may not be imposed in § 1983 cases involving municipalities, but specifically declined to extend its holding to cases involving individual officers. *GJR Investments, Inc.*, 132 F.3d at 1368 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167–68, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). The court further notes that the Supreme Court has also distinguished the nature of its holding in *Leatherman* from that in *Crawford–El.* *Crawford–El,* —— U.S. at ——, 118 S.Ct. at 1595 (characterizing *Leatherman* as holding that courts may not require pleadings of heightened specificity in cases alleging municipal liability, while characterizing present holding as determining that courts may not impose a clear and convincing burden of proof in cases alleging unconstitutional motive).

Hence, while recognizing that dicta within the Supreme Court's *Crawford–El* decision certainly calls into question the validity of the Eleventh Circuit's heightened pleading requirements in § 1983 claims, the court finds that *Crawford–El* was decided on the narrow issue of what pleading requirements courts may impose in cases alleging unconstitutional motive where qualified immunity is at issue. It is not the province of this court to expand the Supreme Court's holding to cover issues squarely addressed by the Eleventh Circuit. Thus, the court finds that until it is provided with clear instruction to the contrary, it is bound to follow Eleventh Circuit precedent requiring pleading with some factual specificity in § 1983 claims.

subordinates, [the supervisor] was deliberately indifferent to [the plaintiff's rights]; (2) whether a reasonable person in the supervisor's position would know that his (or her) failure to train and supervise reflected deliberate indifference; and (3) whether his [or her] conduct was causally related to the constitutional infringement by [the supervisor's] subordinate[s]." *Greason v. Kemp,* 891 F.2d 829, 836–37 (11th Cir.1990) (footnote omitted).

Here, Plaintiffs do not contend that Defendant Parsons personally participated in the alleged deprivation of Plaintiffs' constitutional rights. Rather, Plaintiffs state that Parson's Section 1983 liability turns not on whether, after placed on notice, her alleged inaction, failure, or deliberate indifference "create[d] a causal connection between her omissions and (Bowman's) illegal behavior." (Pls.' Mem. in Opp. at 25.) [11]

As a threshold matter, the court notes that Defendant Parsons may not be held liable under § 1983 for any of Defendant Bowman's actions which may have been in violation of Alabama state laws or regulations, or the Alabama Constitution. Section 1983 actions may only be brought for a defendant's actions which allegedly deprived a plaintiff of a right or rights secured by the Constitution or by federal law. 42 U.S.C. § 1983. Further, the court has already determined that Defendant Bowman, Defendant Parson's subordinate, did not violate Plaintiffs' Sixth Amendment rights, Fourteenth Amendment rights to equal protection or procedural due process, or Eighth Amendment rights—construed as a claim under the substantive due process clause for deprivation of basic needs. Hence, the court cannot impose liability on Defendant Parsons for these alleged deprivations. *See Smith v. United States,* 896 F.Supp. 1183, 1187 (M.D.Fla.1995); *Thompson v. Spikes,* 663 F.Supp. 627, 650 (S.D.Ga.1987).

The court finds that Defendant Parsons' is entitled to qualified immunity on the remaining constitutional claims. As a threshold matter, the court finds that Defendant Parsons was acting within the scope of her discretionary authority in her supervision, training, and discipline of Defendant Bowman. Certainly it is well within the scope of authority of the County Director of the Houston County DHR to determine the appropriate training, supervision, and discipline for a DHR social worker within her County.

To survive a supervisor's claim of qualified immunity and satisfy the second prong of the test set forth in *Greason,* Plaintiffs must show that a reasonable person in the supervisor's position would know that his or her failure to train and supervise reflected deliberate indifference to the plaintiff's constitutional rights. *Greason,* 891 F.2d at 836. The failure to train and/or supervise can amount to deliberate indifference, for purposes of imposing § 1983 liability on supervisory official, when the need for more or different training is obvious, such as when there exists history of abuse by subordinates that might put a supervisor on notice of the

**11.** Plaintiffs explain their § 1983 claims against Defendant Parsons in the following manner:

Plaintiffs seek to hold Parsons liable under § 1983 for her failure to take corrective steps, failure to provide adequate training and failure to take disciplinary action against the defendant, [Bowman], after she had information that abuses of state law and departmental regulations were occurring. Plaintiffs also allege that Parsons had an *affirmative duty to* restrain defendant, [Bowman], from violating state law, regulations and constitutional rights, but failed or refused to perform that duty and failed or refused to restrain [Bowman]. Additionally, plaintiffs allege that Parsons maintained a policy of deliberate indifference to the deprivation of constitutional rights by her failure to properly discipline, control, supervise, transfer, and counsel defendant, [Bowman], and pursued policies, practices and customs that amounted to the acquiescence to the use of manipulative tactics without statutory, regulatory, or judicial, authority, which encourages the defendant, [Bowman], to cause the plaintiff minor children's removal from their homes. (Pls.' Mem. in Opp. at 14.)

The court notes that, in so far as Plaintiffs attempt to state a claim against Parsons for pursuing any particular policy, practice or custom, Plaintiffs have completely failed to state any facts whatsoever giving rise to such a claim. Hence, the court finds that any such claim is due to be dismissed, as well, on grounds that Plaintiffs have failed meet even the notice pleading standards set forth in Fed.R.Civ.P. 8. *See* Fed. R.Civ.P. 8; *GJR Investments, Inc.,* 132 F.3d at 1367.

need for corrective measures, and when failure to train is likely to result in violations of constitutional rights. *Belcher v. City of Foley*, 30 F.3d 1390 (11th Cir.1994). For the reasons set forth above in discussing Defendant Bowman's claim of qualified immunity, the court finds that Defendant Parsons, too, is entitled to qualified immunity on Plaintiffs' claims that she violated Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures and privacy in their own home, and violated Plaintiffs' substantive due process rights to familial privacy and right to basic needs. Specifically, given the nature of the rights asserted and the nature of Defendant Bowman's duties under Ala.Code § 26–14–1 et seq., the court finds that a reasonable person in Defendant Parson's position would not have been aware that her alleged failure to train and/or supervise Defendant Bowman would have led to a deprivation of Plaintiffs' constitutional rights. Plaintiffs have failed to offer any evidence or law to the contrary.[12] Hence, the court finds that Plaintiffs' Section 1983 claims against Defendant Parsons are due to be dismissed.

### C. *Section 1985 Conspiracy Claims*

■ Plaintiffs also bring a claim pursuant to 42 U.S.C. § 1985(3).[13] The elements of a cause of action under § 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785, 793 (11th Cir.1992) (quoting *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). In support of their § 1985(3) claim, Plaintiffs contend that Defendants conspired to deprive Plaintiffs, because they are American Indians, of the equal protection of the laws or the privileges and immunities secured under the Constitution of the United States. (Amend.Compl.¶ 65.)[14]

■ Rule 8(a)(2) of the Federal Rules of Civil Procedure mandates that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 "notice pleading" is to provide a "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir.1983) (quoting *Conley v. Gibson*,

---

**12.** Plaintiffs acknowledge that their allegations concerning Defendant Parsons' liability are scant. (Pls.' Mem. in Opp. at 26.) However, Plaintiffs request that the court stay ruling on Parson's qualified immunity defense until Plaintiffs may engage in additional discovery. (*Id.*) As Defendants correctly note, the Supreme Court has stated that, "[u]nless the plaintiff's allegation states a claim of violation of a clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Accordingly, the court finds that Plaintiffs' request to stay a ruling on the issue of Defendant Parsons' qualified immunity is due to be denied.

**13.** Section 1985(3) provides in relevant part:

If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State ... from giving or securing to all persons within such

State ... the equal protection of the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is ... deprived of having and exercising any right or privilege of a citizen of the United States, the party so ... deprived may have an action for the recovery of damages occasioned by such ... deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3) (1988).

**14.** Because Plaintiffs apparently allege that Defendant Parsons and Bowman acted in conspiracy with the other Defendants in this action— namely, Lamar Hadden as Sheriff of Houston County, Jerry Hunt both in his official capacity as an employee of the Houston County Sheriff's Department and individually, Leroy Wood both in his official capacity as an employee of the Houston County Sheriff's Department and individually, and Tommy Harper—the fact that the court has dismissed the § 1983 claims against Defendant Bowman and Parsons does not render this conspiracy claim alleged against them moot.

355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While federal pleading rules are liberal, however, the court finds that, here, more than conclusory allegations are required to put the defendant on "fair notice" of plaintiff's claims. The Eleventh Circuit has explained what is sufficient under the "notice pleading" to state a claim for civil conspiracy:

Even under the so-called notice rules of pleading, the complaint must state a cause of action sufficient to affirmatively show the plaintiff is entitled to relief, for

[i]t is not enough, to indicate merely that the plaintiff has a grievance but sufficient detail must be given so that the defendant, and the Court, can obtain a fair idea of what the plaintiff is complaining, and can see that there is some legal basis for recovery.

2A J. Moore & J. Lucas, Moore's Federal Practice P. 8.13 at 8–118 (2 ed.1984) (citations omitted).

In civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required.... In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed. [citations omitted] A complaint may justifiably be dismissed because of the conclusory vague and general nature of the allegations of conspiracy. [citations omitted]

*Fullman,* 739 F.2d at 556.[15]

■■■ Here, other than stating that Plaintiffs are "American Indians" (Amend. Compl.¶ 19), Plaintiffs fail to allege any facts in support of the conclusory allegations contained in Paragraph 65 of the Amended Complaint. Specifically, Plaintiffs fail to allege anything whatsoever concerning the "nature" of the conspiracy in which Defendants allegedly engaged in order to deprive Plaintiffs of their rights. *See Fullman,* 739 F.2d at 556. In opposing Defendants' Motion to Dismiss, Plaintiffs state that "[f]rom the allegations, it can be inferred that the defendants agreed to act in concert." (Pls.' Mem. in Opp. at 17.)

However, absent specific facts to support such an allegation, the court declines to draw such an inference. Hence, the court finds that Plaintiff's § 1985(3) claims against Defendant Parsons and Bowman are due to be dismissed. *See Griswold v. Ala. Dep't of Indust. Rel.,* 903 F.Supp. 1492, 1500 (M.D.Ala.1995) (Albritton, J.).

D. *State Law Claims*

Plaintiffs' remaining claims against Defendants Parsons and Bowman are brought pursuant to Alabama state law. Specifically, Plaintiffs bring claims for the following torts: (1) intentional infliction of emotional distress; (2) negligent entrustment; (3) trespass; (4) assault; (5) false imprisonment; and (6) civil conspiracy. (Pls.' Mem. in Opp. at 17–18.) In response to these claims, Defendants have raised the affirmative defense of substantive immunity.

■■■ The Alabama Supreme Court has adopted the Restatement (Second) of Tort's formulation for determining whether a state actor has immunity from tort liability. *Lightfoot v. Floyd,* 667 So.2d 56, 64 (1995). This formulation states:

(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

(a) he is immune because engaged in the exercise of a discretionary function....

*Lightfoot,* 667 So.2d at 64 (quoting Restatement (Second) of Torts 895D, "Public Officers" (1974)). Hence, under Alabama law, a state employee is entitled to substantive immunity from intentional torts if his or her actions fall within the exercise of a discretionary function. *Parker v. Downing,* 547 So.2d 1180, 1184 (Ala.Civ.App.1988) (extending substantive immunity to intentional torts). Thus, the threshold question for the court is whether Parsons and Bowman were acting within the scope of their discretionary authority when they allegedly engaged in the acts at issue here.

---

**15.** Again, the court notes that the Supreme Court's recent holding in *Crawford–El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), may call into question the validity of this standard. However, as discussed, *infra,* the court finds that it is bound to follow clear precedent set forth by the Eleventh Circuit on this issue.

The Alabama Supreme Court has identified the following factors as relevant in determining whether a state actor engaged in a discretionary function: (1) the nature and importance of the function that the officer or employee is performing; (2) the extent to which passing judgment on the exercise of discretion will necessarily amount to passing judgment on the conduct of a coordinate branch of government; (3) the extent to which the imposition of liability would impair the free exercise of discretion by the officer or employee; (4) the extent to which the ultimate financial responsibility will fall on the officer or employee; (5) the likelihood that harm will result to members of the public if the action is taken; (6) the nature and seriousness of the type of harm that may be produced; and (7) the availability to the injured party of other remedies and other forms of relief. *Mitchell v. Davis,* 598 So.2d 801, 806 (Ala.1992) (citing *Barnes v. Dale,* 530 So.2d 770, 784 (Ala.1988)).

Furthermore, the Alabama Supreme Court has distinguished discretionary acts from ministerial ones. The Court has stated:

> Comment h. to § 895D, Restatement (Second) of Torts (1979), describes "ministerial acts" as those involving "[l]ess in the way of personal decision or judgment or [in which] the matter for which judgment is required has little bearing of importance upon the validity of the act," and states that "[m]inisterial acts are those done by officers and employees who are required to carry out the orders of others or to administer the law with little choice as to when, where, how, or under what circumstances their acts are to be done." Conversely, "discretionary acts" are defined as follows by Black's Law Dictionary 419 (5th ed. 1979): "Those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion.... One which requires exercise in judgment and choice and involves what is just and proper under the circumstances."

*Smith v. Arnold,* 564 So.2d 873, 875 (Ala.1990). Where a defendant's decisions involve the exercise of her professional judgment and discretion, substantive immunity is appropriate. *Id.* "Exposure to liability for such decisions, which are made on the State's behalf, would unduly hamper the decision-making process and impose undesirable shackles on the agencies of government." *Id.*

Again, the court notes that Alabama law charges DHR with wide-ranging duties and responsibilities where there are reports that a child's welfare is in jeopardy. Such duties and responsibilities include investigating reports of child abuse and taking a child into protective custody initially and without the consent of the child's parents if the circumstances are such that continuing custody with the parents presents an imminent danger to the child's life or health. Ala.Code § 26–14–6 (1975); *Foy,* 94 F.3d at 1530. The court finds that here, Defendant Bowman's decisions concerning the Plaintiff minor children's care involved the exercise of her professional judgment and discretion. Hence, the court finds that her actions were within the scope of her discretionary authority. Likewise, the court finds that Defendant Parsons' actions in supervising Defendant Bowman were well within her discretionary authority. Certainly it is well within the scope of authority of the County Director of the Houston County DHR to determine the appropriate training, supervision, and discipline for a DHR social worker within her County. Accordingly, the court finds that Defendants Bowman and Parsons are entitled to substantive immunity on the state tort claims alleged in Plaintiffs' Amended Complaint; said claims are due to be dismissed, as well.

## ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion to Dismiss be and the same is hereby GRANTED in part and DENIED in part, as follows:

(1) Defendants' Motion to Dismiss Plaintiffs' claims against Defendant Houston County DHR be and the same is hereby DENIED AS MOOT. The Clerk of the Court is DIRECTED to remove Houston County DHR from the caption of this case.

(2) Defendants' Motion to Dismiss Plaintiffs' claims against Defendant Bowman and Parsons in their official capacities be and the same is hereby DENIED AS MOOT.

(3) Defendants' Motion to Dismiss with respect to Plaintiffs' remaining claims against Defendant Parsons and Bowman be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that Plaintiffs' Motion for Partial Summary Judgment be and the same is hereby DENIED AS MOOT, and Defendants' alternative Motions be and the same are hereby DENIED AS MOOT.

A Rule 16 Uniform Scheduling Order shall be issued in conjunction with this Memorandum Opinion and Order.